## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER JACOBY<br>12319 Wyndom Road<br>Philadelphia, PA 19154<br><br>　　　　　Plaintiff,<br>　　v.<br><br>PEPPER ENVIRONMENTAL<br>SERVICES, INC.<br>2251 Fraley Street<br>Philadelphia, PA 19137<br>　　and<br>STEVEN PEPPER<br>2251 Fraley Street<br>Philadelphia, PA 19137<br>　　and<br>WALTER ARMBRUSTER<br>2251 Fraley Street<br>Philadelphia, PA 19137<br><br>　　　　　Defendants. | CIVIL ACTION<br><br>No.: _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Jennifer Jacoby, by and through her undersigned counsel, hereby avers as follows:

### I.  INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Pepper Environmental Services, Inc., Walter Armbruster, and Steven Pepper (collectively "Defendants") for violations of the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et. seq.*). In particular, Plaintiff alleges that she was wrongfully terminated by Defendants (among other claims).[1]

---

[1] Plaintiff will seek leave to amend the instant lawsuit to add claims under the Pennsylvania Human Relations Act ("PHRA"), the Philadelphia Fair Practices Ordinance ("PFPO"), and the Americans with Disabilities Act ("ADA") once properly administratively exhausted. Plaintiff was required to initiate such claims within state and federal agencies before including them herein.

## II. JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

## III. PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Pepper Environmental Services, Inc. (hereinafter "Defendant PES" where referred to individually) is a full-service environmental contracting service company, providing such services as removal and transportation of hazardous waste and regulated waste products.[2]

---

[2] Because Plaintiff is unclear on the <u>exact</u> interconnection or potential overlapping resources of other entities, Plaintiff reserves the right to amend this lawsuit to include other corporations such as Mindy Lynn, L.P., a/k/a Bridge Industrial Associates and Jenkintown Associates. Upon information, these entities are likely the same enterprise merely serving as a separate corporate formality for building ownership and/or management of Defendant PES. Plaintiff will utilized discovery to determine the appropriateness of such additional defendants.

8. Steven Pepper, sued *individually* (hereinafter "Defendant Pepper" where referred to individually) is the owner and President of Defendant PES.

9. Walter Armbruster, sued individually (hereinafter "Defendant Armbruster" where referred to individually) is a high-level executive (Vice President) and upon information and belief a potential shareholder of Defendant PES.

10. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

### IV. FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is a 46-year-old woman.

13. Plaintiff was hired by Defendant PES effective on or about June 5, 2000; and in total, Plaintiff was employed with Defendant PES for slightly more than 20 years (until termination, as discussed *infra*).

14. At all relevant times during her employment (whether working in person or remotely), Plaintiff was deemed based at 2251 Fraley Street, Philadelphia, PA 19137 (the headquarters of Defendant PES).

15. Plaintiff was (and remains) a very accomplished professional, and she had worked for Defendants in many capacities, performing many types of duties. Plaintiff had worked in such roles as Director of Operations, Chief Financial Officer ("CFO"), and Office Manager. She was capable of performing virtually any managerial, administrative, or financial role within Defendant PES.

16. Plaintiff primarily reported to Walter Armbruster (Vice President and Superintendent – "Defendant Armbruster," an individual defendant herein) and Steven Pepper (President and owner – "Defendant Pepper," an individual Defendant herein).

17. Plaintiff commenced <u>federally protected</u> medical leave in or about the week of August 10th, 2020. Plaintiff sought and was *expressly approved* for leave under the Family and Medical Leave Act "FMLA") by Defendants' administration and management. Plaintiff was provided with and submitted all necessary information for FMLA qualification.

18. Plaintiff was <u>approved</u> for a 12-week FMLA leave wherein she kept Defendants on notice that she: (a) would return in November of 2020 (after prior updates of appointments); (b) had qualifying FMLA conditions (as evidenced by <u>approved</u> leave); and (c) was unable to work by virtue of her requested and approved FMLA leave.

19. Plaintiff required FMLA leave for mental health treatment, including but not limited to depression, anxiety and other complications. And Plaintiff was medically cleared to resume working for Defendants on or about November 2, 2020 (using <u>a little less</u> than her federally-permissible 12-week period).

20. Defendants had become frustrated with Plaintiff's continual use of FMLA, updates extending her FMLA leave, and that Plaintiff decided to use *close to* her maximum of 12 weeks of FMLA leave (explained more *infra*).

21. Plaintiff expected and anticipated returning to work on Monday, November 2, 2020. But after informing Defendants of her medical clearance to resume working, Plaintiff was instructed by Defendant Pepper (in concert with Defendant Armbruster) she was not permitted to resume working until she first had a meeting with him.

22. By late November 2, 2020 *and through the subsequent week*, it became extremely clear that Plaintiff was going to be terminated from her employment (*and it was just a matter of time*). Plaintiff already knew another female had been hired to perform her overall role, and it was very suspicious that Plaintiff was not being welcomed back with open arms (in-person) and instead directed to only return following a meeting with Defendant Pepper. The meeting with Defendant Pepper and days that followed confirmed Plaintiff's likely and imminent termination. In particular, as of November 3, 2020:

  (A) Defendant Pepper had instructed Plaintiff she was not permitted to enter the physical premises of Defendant PES (unlike other office members or management), also *claiming* this might help her asthma problems of which he was aware;

  (B) Defendant Pepper instructed Plaintiff she needed to make arrangements to collect all of her personal items and belongings in the workplace (which Plaintiff ultimately did); and

  (C) Defendant Pepper informed Plaintiff that she had been stripped of virtually all of her job duties, as they were being performed by Plaintiff's replacement obtained during her FMLA leave.[3]

23. As of early November 2020, Plaintiff had also learned that she was not being paid any further for basic non-salary benefits she previously received such as a car allowance and various insurance. Plaintiff confirmed via e-mail with Defendants that post-FMLA leave, she (a) was not permitted to present physically in the office; (b) was required to get all of her personal belongings; (c) had been assigned minimal duties as contrasted with her role(s) pre-FMLA; and (d) was not set up to work remotely since being abruptly prohibited from physically working in Defendants' office(s).

---

[3] Plaintiffs' responsibilities over accounts receivable, accounts payable, billing, billing communications, check writing, and many other aspects of her prior role(s) were reassigned post-FMLA to Plaintiff's replacement.

24. In the weeks following Plaintiff's return from FMLA leave, Plaintiff offered to perform any work permitted in person or remotely but could not help but feeling as though it were merely a matter of time before her termination was communicated to her in light of having been replaced, in addition to the foregoing actions against her. Plaintiff was not even permitted to participate in conferences with other employees as she had pre-FMLA leave, nor was she even receiving information, proposals or other data to even perform her job. Indeed, Defendants had never even endeavored to set Plaintiff up to work fully remotely upon her return from FMLA leave.

25. As of November 3, 2020, Defendants had violated the FMLA by not reinstating Plaintiff on the same day in which she was medically cleared <u>and separately</u> by not reinstating Plaintiff to her same or equivalent position.[4]

26. During the first half of November, 2020, Plaintiff expressed concerns that she was being treated unfairly due to her FMLA needs and FMLA protected leave. Just by way of example, on November 6, 2020, Plaintiff e-mailed Defendant Pepper: "I have been treated poorly and quite frankly like an outsider from the day I informed you of my return for no reason. I did nothing wrong to be treated like [this] because I needed to take FMLA."

27. Plaintiff came to learn on or about December 2, 2020 that she was supposedly e-mailed a proposed severance agreement over a week earlier (on or about November 19, 2020) when Defendants inquired if she would accept their prior offer of severance pay and cease

---

[4] *See* 29 CFR § 825.215 (An equivalent position is one that is <u>virtually identical</u> to the employee's former position in terms of pay, <u>benefits</u> and <u>working conditions</u>, <u>including privileges, perquisites and status</u>. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.)(Emphasis added). Plaintiff **was not** reinstated to the same or similar position, as defined by federal regulations.

working. Plaintiff could not locate such information, and Defendants claimed they couldn't either (presumably to offer Plaintiff a more comprehensive legal waiver as discussed below).

28.     Plaintiff tried to inquire if she could remain employed in light of the economic climate <u>in lieu of</u> accepting severance pay (her clearly expressed preference), and she was informed she would be terminated <u>even if</u> she if did not accept the proposed severance package. Plaintiff was told in no uncertain terms she was being terminated effective December 23, 2020.

29.     Plaintiff was told to ignore or disregard the initial severance proposals, and she was thereafter presented with a more comprehensive "Separation Agreement and General Release" wherein Plaintiff was offered $64,400.00 in exchange for, *inter alia*, waiving all possible legal claims for violations of "the Family and Medical Leave Act" . . . "the Americans with Disabilities Act" . . . and the "Pennsylvania Human Relations Act."

30.     The aforesaid severance package (re-labeled Separation Agreement and General Release) was <u>an unsolicited offer</u>, <u>not made pursuant to *any* specific policy</u> of Defendants, and was an effort <u>to conceal</u> discrimination / retaliation and leverage an abrupt termination through financial duress. This severance offer by Defendants is clearly admissible evidence of discrimination, retaliation and attempted pretext.[5]

---

[5] *See e.g. Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance when policies did not require upon condition of waiving FMLA claim supported finding of pretext in FMLA claim among other facts); *See also Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)("Severance pay packages contingent upon a release of claims which are offered ***contemporaneously with the notice of termination*** are *not* covered by [Rule 408]", and the motive in offering same is admissible evidence in a discrimination or retaliation claim and is admissible at trial in this case); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1342-43 (9th Cir. 1987)(finding no abuse of discretion when district court admitted severance agreement into evidence, stating "[w]here, as here, the employer tries to condition severance pay upon the release of ***potential claims***, the policy behind Rule 408 does not come into play.")(Emphasis added).

31. Plaintiff was terminated discriminatorily, retaliatorily, and through interference with her federally-protected rights under the FMLA. Mere examples of evidence underlying such an unlawful termination include but are not limited to:

   (1) Defendants had <u>no intent</u> of terminating Plaintiff pre-FMLA leave as evidenced by numerous e-mail chains wherein: (a) Defendant Pepper identified they were so busy Defendants needed Plaintiff to return from FMLA; (b) expressions via e-mail that Defendants' team was barely keeping up without Plaintiff and needed medical updates of how soon she could return; and (c) assurances Plaintiff was not being replaced and would be able to resume her job (despite Defendants engaging in additional hiring);

   (2) Defendant Pepper became frustrated with Plaintiff's updates of extending her FMLA-protected leave for different lengths of time, even expressing by mid-September via e-mail he is "just trying to keep the ball rolling" and needs his business to "thrive and run efficiently" (when Plaintiff was giving an update on her continued need for medical leave);

   (3) Defendants had no intent on actually reinstating Plaintiff from her FMLA leave due to the sheer length of her need for FMLA leave, as Plaintiff had already been functionally replaced;

   (4) Defendants never even attempted to feign Plaintiff was reinstated from her FMLA leave, as Plaintiff effective the day in which she was to return from FMLA leave: (a) was not given her same job duties; (b) was not permitted to resume physically working at Defendants' facilities; (c) was made her collect all personal belongings; (d) was not permitted to participate in normal conferences or management meetings; (e) was given no meaningful communication or information; and (f) Defendants were merely calculating how and when to communicate their unlawful termination of Plaintiff in the coming weeks;

   (5) Plaintiff was not given progressive discipline leading up to her FMLA leave, and she was one of the strongest performing professionals within Defendants' business as evidenced by her 20 years of accomplishments therein;

   (6) After nearly 20 years of employment, Plaintiff was proposed severance and told she would be terminated in very close temporal proximity to her return from FMLA leave; and

   (7) Defendants *cannot even pretend* there were financial considerations due to the COVID-19 pandemic necessitating Plaintiff's termination as: (a) Defendants

hired a replacement for Plaintiff; (b) Defendants had no problem attempting to offer Plaintiff <u>over</u> $60,000.00 to waive her clear discrimination and retaliation federal violations; (c) Defendants' management collectively took at least a $500,000.00 bonus from profits and use of PPP monies shortly before Plaintiff's termination from employment; and (d) there was no type of reduction in force, as Plaintiff was single out for a discriminatory / retaliatory termination from employment.

32. Plaintiff could not feasibly consider accepting Defendants' offer of severance compensation because Plaintiff's financial losses are catastrophic to her. In particular,

(A) Plaintiff earned in excess of $120,000.00 per year in salary;

(B) Plaintiff's annual bonus alone was approximately $50,000.00 per year;

(C) Plaintiff's profit sharing exclusive of salary or bonus was at least $20,000.00 per year; and

(D) Plaintiff had a very substantial benefits package, inclusive of insurance, car allowance, and other entitlements.

33. Plaintiff's severance package offered her merely (and approximately) thirty percent (30%) of what she would generally earn <u>in a single year</u> to waive unequivocal and indefensible violations of state and federal anti-discrimination laws. There is simply no question Plaintiff has and continues to suffer very substantially from Defendants' intentional discrimination and retaliation against her as outlined *supra*.

## First Cause of Action
## <u>Violations of the Family and Medical Leave Act ("FMLA")</u>
### (Interference & Retaliation)

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. Plaintiff was at all times during her period of employment an eligible employee for FMLA protection, and she met all statutory prerequisites for such protection(s). Indeed,

Defendants characterized Plaintiff as being on and utilizing FMLA leave from early August through early November of 2020.

36. Defendants committed interference <u>and</u> retaliation violations of the FMLA by: (a) not reinstating Plaintiff immediately upon clearance on November 2, 2020; (b) not reinstating Plaintiff to the same or equivalent job upon return from FMLA leave; (c) having a predetermined Plan to terminate Plaintiff upon return from FMLA; (d) terminating Plaintiff for her exercise of FMLA rights and to prevent further such use; and (e) in other implicit and explicit ways as can be inferred from the allegations set forth above in this lawsuit.

37. Defendants Pepper and Armbruster are personally liable <u>as individuals</u> incapable of being shielded by corporate status under the FMLA. While Defendant Pepper is primarily referred to throughout the Complaint, they <u>both</u> personally undertook all unlawful actions as outlined in this Complaint. They make all management decisions together, and they jointly discriminated / retaliated against Plaintiff. The FMLA permits an individual to be sued as to his or her own assets when they are a manager, corporate officer, or owner involved in the statutory violation(s). *See Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012).

38. These actions as aforesaid constitute <u>both</u> interference and retaliation violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination / retaliation in the future against any employee(s);

B. Defendant are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, pension, and benefits.

      C.      Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions (where legally permitted);

      D.      Plaintiff is to be awarded liquidated and punitive damages as permitted by applicable laws herein;

      E.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate; and

      F.      Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law.

      Respectfully submitted,

      **KARPF, KARPF & CERUTTI, P.C.**

By: _____
      Ari R. Karpf, Esq.
      3331 Street Rd.
      Bldg. 2, Ste. 128
      Bensalem, PA 19020

Date: January 4, 2020

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Jennifer Jacoby                                    :         CIVIL ACTION
                                                   :
                v.                                 :
                                                   :
Pepper Environmental Services, Inc., et al.        :         NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                 ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                             ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 1/4/2021 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 12319 Wyndom Road, Philadelphia, PA 19154

Address of Defendant: 2251 Fraley Street, Philadelphia, PA 19137

Place of Accident, Incident or Transaction: Defendants place of business

---

*RELATED CASE, IF ANY:*

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes [ ]   No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1/4/2021   *(signature)*   ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf , counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 1/4/2021   *(signature)*   ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JACOBY, JENNIFER

**DEFENDANTS**
PEPPER ENVIRONMENTAL SERVICE, INC., ET AL.

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards Act | **SOCIAL SECURITY** | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | 861 HIA (1395ff) | 480 Consumer Credit |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | | 790 Other Labor Litigation | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | X 442 Employment | 510 Motions to Vacate Sentence | | 871 IRS—Third Party 26 USC 7609 | 896 Arbitration |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | | |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
"FMLA" – 29 U.S.C. §§ 2601, et. seq.

Brief description of cause:
Violations of the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, et. seq.).

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 1/4/2021
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #       AMOUNT       APPLYING IFP       JUDGE       MAG. JUDGE